FREDERICK POLZEN v. HENRY R. MORSE.

*Negligence—Evidence—Setting fires.*

1. Evidence that, after the destruction of plaintiff's property by fire emanating, as he claimed, from a fire-pit in which defendant burned the refuse from his saw-mill, the defendant erected a high board fence around the pit, since which no fire has spread from the pit, is improperly admitted as tending to establish defendant's negligence in not building the fence before the destruction of plaintiff's property.
2. If the fire was caused by the sudden shifting of the wind, and its increased violence, defendant was not liable for the consequences, it not appearing that he did not take the proper precautions to watch and guard the fire to prevent its escape, nor that such a wind was blowing as rendered it imprudent to start the fire when started.

Error to Otsego. (Kelley, J.) Argued February 11, 1892. Decided April 8, 1892.

Negligence case. Defendant brings error. Reversed. The facts are stated in the opinion.

*Turnbull & Dafoe (C. E. Williams,* of counsel), for appellant. •

*Depew & Rutherford* and *Frank Emerick,* for plaintiff.

GRANT, J. Plaintiff's house and its contents were consumed by fire July 11, 1888. He instituted this suit, charging that the fire was caused by the negligence of the defendant.

The declaration contained three counts. The first charged that the defendant neglected to use proper and reasonable care to prevent the escape of fire from his fire-pit; the second, that it was dangerous on that day for defendant to light a fire or permit it to burn in his fire-pit, on account of the wind and condition of the weather, and dryness of the surroundings; the third, that he neglected to build a high board fence around his fire-pit, or to provide anything to prevent the escape of fire therefrom.

Defendant owned and operated a saw-mill situated on the easterly bank of Thunder Bay river. This mill had been in operation for 25 years, and was run by water-power. Defendant purchased it in the spring of 1887. To the south and east of this mill is situated the city of Alpena. Prior to the purchase by the defendant, a portion of the refuse from the sawing had been consumed in a similar pit, considerably nearer the city. Defendant disposed of the waste matter from the mill by hauling and piling it in a vacant field along the bank of the mill-pond to the north and east of his mill. Upon

this was placed the sawdust ready for burning in the winter. Nearly east of this he piled his slabs. Between these two piles was a public highway. A railroad, running nearly east and west, crossed the highway and the mill-pond to the south of these piles. The fire-pit then used was in a ravine extending from the river, and further up stream. The distance from the fire-pit to the sawdust pile was 28 rods; to the slab pile, 42 rods; to the mill, 112 rods; and to the plaintiff's house, 304 rods. The wet *debris* from the mill was hauled to this pit daily, into which it was dumped and burned. It was hauled along this public highway till nearly opposite the pit, the fire-pit being to the west of the road. To the north and east of this road, opposite the fire-pit, was vacant land covered with brush, stumps, logs, and *debris*. A short distance from the mill, and to the north and east, were situated the defendant's boarding-houses and barn. Near the slab pile was the roundhouse of the railroad company. Between the fire-pit and the plaintiff's lot is what is known as the "Taylor Forty," on which was an old sawdust pile, which was 224 rods from defendant's pit. Men were engaged in clearing up this "Taylor Forty," and were burning up the *debris* on it, upon the day of the fire. The parties engaged in this work testified to this, as did also others who saw the fire. Fires had also been burning for several days to the north and east of the fire-pit, and several witnesses testified that defendant shut down his mill, so that his employés might fight the fire coming down from these plains. A large number of witnesses testified that the fire that consumed the defendant's slab pile, sawdust pile, boardinghouse, and the roundhouse, came from the plains. One witness for the plaintiff, who was at work about 50 or 60 rods from the fire-pit, sorting logs for

the boom company, testified that he saw the fire leave the fire-pit about 11 o'clock, and run along until it reached the sawdust pile. His is the only testimony that the fire emanated from the pit. The defendant's employés started the fire in the pit in the morning between 7 and 8 o'clock. The wind was then from the north, and was not blowing hard. Later in the day it changed to the north-west, blew very violent, and a fire swept down through the city, destroying a large portion of one ward, and burning about a hundred houses.

It is unnecessary for us to determine from which one of these three sources emanated the fire which destroyed the plaintiff's property. He has failed upon this record to make out a case of negligence upon either count of his declaration.

There was no evidence that the failure to erect a fence was negligence. Defendant conducted the business in the same manner it had been conducted for 25 years. No one appears to have thought there was danger in so doing. The only evidence from which the jury could infer negligence in this respect was the fact that after the fire the defendant erected a fence, and that since its erection no fire had spread from the pit. This evidence was admitted under objection. It was clearly incompetent under the frequent rulings of this Court. Its sole purpose was to influence the jury, and there was no other evidence from which they could find that common prudence required the maintenance of a fence.

There is no evidence whatever that the defendant did not take the proper precautions to watch and guard this fire to prevent its escape. No such wind is shown to have been blowing as to have rendered it imprudent to start the fire in the pit, nor that defendant did not have a sufficient number of employés there for protection. The wind was not then blowing in the direction of the

city. If it suddenly shifted, and increased greatly in violence, the defendant was clearly not liable for the consequences.

The plaintiff, upon the trial, evidently planted his right of recovery upon the idea that it was negligence to use this fire-pit at all, and the court left it to the jury upon that basis. No such charge is made in the declaration. It is framed upon the theory that it was lawful to use it for the purpose of burning the waste material, but that defendant was guilty of negligence in one of the three particulars already mentioned.

Judgment reversed, and a new trial ordered.

The other Justices concurred.